UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TONYA L COLE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-00211 |
| | § | |
| PEARLAND INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Pending before the Court is the defendant's, Pearland Independent School District (the "district"), motion for summary judgment (Docket No. 57), the plaintiff's, Tonya Cole (the "plaintiff"), response (Docket No. 61), the district's reply (Docket No. 64), the plaintiff's sur-reply (Docket No. 66), and the district's response to the sur-reply (Docket No. 67).  Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS the district's motion for summary judgment.

## II.    FACTUAL BACKGROUND

This is an employment discrimination case.  The plaintiff, an African-American woman, was hired as a counselor by the Pearland Independent School District (the "district') in August of 2004.  She claims that the adverse actions against her began while she was a counselor at the Pearland Junior High School South (JHS).  She alleges that, in her capacity as school counselor, some students complained to her about "being treated unfairly and [about] how other students were given favors."   In addition, some students were allegedly failing classes due to noncompliance with those students' Individualized Education Program ("IEP") accommodations.

The plaintiff contends that she first reported the alleged disparate treatment of students and other problems at JHS to her supervisor, principal Mollye Dahlstrom.  Then, in February of 2008, apparently believing that her concerns were not being addressed, the plaintiff wrote an email and sent a letter to Nan Weimer, the Assistant Superintendent of Secondary Schools, regarding the alleged problems at JHS.[1]

The plaintiff alleges that Dahlstrom started harassing her because Weimer informed Dahlstrom of the plaintiff's communications and complaints.[2]  She contends that, in the fall of 2007,  after she informed Dahlstrom that her husband had moved to Dallas for work, Dahlstrom began harassing her about whether she would be moving.  The plaintiff claims that she told Dahlstrom she had no interest in moving, but Dahlstrom continued harassing her, even posting her job position as vacant at the district's job fair, telling her she needed to put her house on the market for sale, and threatening that she would never get another position in the district.  During that same time period, 2007-2009, the plaintiff asserts that Dahlstrom also yelled at her inappropriately, Dahlstrom appeared unapproachable, would not give answers to questions regarding job-related issues, continuously found "little things" to say against her, gave her false and unjustified write-ups, and told a teacher the plaintiff was on medication.

In May of 2008, the plaintiff sent emails and a letter to Cary Partin, the supervising Assistant Superintendent for JHS, and met with him to express her concerns about JHS.  In the plaintiff's letter, she makes several complaints about Dahlstrom's behavior towards her and

---

[1]In the email and letter to Weimer, the plaintiff does not specifically mention that any alleged unfair treatment of her or students was based on race.  In fact, during her deposition, the plaintiff admitted that when she wrote to Weimer, she did not feel she was being treated differently because of her race.

[2]Weimer has declared, under penalty of perjury, that she never informed Dahlstrom of the information she received from the plaintiff.

mentions other alleged problems with the management of JHS, but does not claim she was being discriminated against based on race.[3]

From January to April of 2009, the plaintiff was on leave pursuant to the Family and Medical Leave Act (FMLA). She claims that in February of 2009, she filed a complaint with the Texas Education Agency ("TEA"). In the complaint, she alleges that Dahlstrom was retaliating against her because of complaints she had made regarding Dahlstrom. She also complained of a hostile and harassing work environment, "[a]buse of [p]ower in retaliation to employees," and attempts to "force resignation through continuous attacks which formulate a vendetta that affects my dignity." She did not claim that she was being discriminated against based on race.

In April of 2009, while still on FMLA leave, the plaintiff submitted several letters requesting a transfer and a formal transfer request, but the request came after the transfer deadline that had been set by Robert Crager, the Executive Director of Human Resource Services.

The plaintiff returned to work from FMLA leave on April 20, 2009. She alleges that upon her return, Dahlstrom approached and yelled at her that no one knew she was returning to work. On May 18, 2009, the plaintiff had a meeting with Dahlstrom; Janet Cordova, the assistant principal at JHS, also attended. According to notes from the meeting, the plaintiff said, among other things, that she felt there had been a breakdown in communication and she was uncomfortable conferencing with Dahlstrom. She also stated that she did not "want to believe [Dahlstrom was] a racist." When Dahlstrom said she was offended by a statement the plaintiff

---

[3]In a May 2008 grievance, which the plaintiff claims she gave to Partin at the meeting, she complains, *inter alia*, that Dahlstrom had a lack of respect for counselors and their skills, Dahlstrom made verbal threats concerning her position, "unequal and unfair treatment of staff in regards to certain responsibilities, and "issues with intimidation/unfairness in regards to granted favors." She did not specifically claim that she was being discriminated against based on her race and, instead, requested "the whistleblowers protection."

had made calling her a racist, the plaintiff responded that she did not feel Dahlstrom was a racist, but her statement was based on gestures and responses from Dahlstrom.

That same day, May 18, 2009, the plaintiff filed a grievance, complaining of the demeanor in which Dahlstrom had approached her after she returned from FMLA leave.  In the grievance, the plaintiff contends that Dahlstrom continued to be abusive and created a hostile working condition and requested  "whistle blower protection," but does not allege that the hostile work environment was due to her race.[4]  Subsequent to the grievance, the plaintiff complained that she had asked for a day off to attend her son's graduation, but Dahlstrom questioned her request while white employees were allowed to go to their children's graduation.  The plaintiff admits, however, that she was ultimately given the day off.  She also alleges that she was required to push a trash can to students in the cafeteria and was not allowed a duty free lunch, whereas a white counselor was allowed to enjoy her lunch duty-free.[5]

On October 7, 2009, the plaintiff wrote a letter to Superintendent Bonny Cain, asserting that she was working in hostile conditions; she requested a meeting with Cain and a transfer.  Cain responded on October 15, 2009, and noted that the plaintiff's reference to "hostile conditions" was alarming and a possible violation of district policy.  Cain sent a copy of the policy to the plaintiff and recommended that she review it and follow its reporting procedures if she decided to pursue the matter.

---

[4]On the day the plaintiff was to have her grievance meeting (from the May 18, 2009, grievance), she informed Crager that Dahlstrom was coming into her office more and "things were kind of clearing."  Therefore, the plaintiff voluntarily retracted her grievance.

[5]Apparently, in an effort to control student movement in the cafeteria, the practice at JHS was to have teachers and other staff push the trash can to the students instead of the students getting up to go to the trash cans.  The plaintiff admits that she saw other staff members push the trash can, including Dahlstrom, Ms. Cordova, and Mr. Barcelona, but asserts that they did so after she filed a grievance.

The plaintiff filed a grievance on October 15, 2009, with the district, claiming, *inter alia*, that she was working in hostile conditions, her personal health information was disclosed in writing as part of a reprimand by Dahlstrom, and she was being physically and verbally harassed, creating an intimidating, threatening, hostile, or offensive work environment.  She sought a possible TEA investigation and remedies under the "Whistle Blowers Statute," but did not claim she was being discriminated against based on race.

The district hired an attorney to investigate the grievance.  After the investigation, during which the plaintiff was interviewed, the investigator concluded, among other things, that the plaintiff failed to present any evidence that Dahlstrom's alleged adverse treatment was based on her race or any other protected status.

On December 7, 2009, the plaintiff was informed that her transfer had been granted and that she would be reassigned to Berry Miller Junior High School ("Berry Miller"), effective January 18, 2010.  She was also informed that her personnel file from JHS would be forwarded to her new principal, Lonnie Leal, at Berry Miller, who will complete her 2009-2010 annual appraisal.

In January of 2010, the plaintiff had a meeting with Leal, Crager, and Sonia Serrano in order to discuss her new assignment.  The plaintiff asserts that she was asked questions about the role of a counselor, number of years in education, and her philosophy, questions she claims were only asked of her because she was African-American.  She admits, however, that principal Leal had a "very inviting presentation," was very "pleasant," and was excited that "[she] was coming on the campus."

Nevertheless, the plaintiff claims that on March 12, 2010, she received a performance evaluation from Leal that was less favorable than her prior evaluations.  She claims that she

attempted to present documentation to challenge the evaluation but Leal told her it was nonnegotiable and that he had been instructed by Dahlstrom and Crager to give her the low ratings.  The plaintiff alleges that she was discriminated and retaliated against while at Berry Miller because: she was not given an opportunity to talk about her evaluation; Leal asked another counselor to assist with the end-of-year plan; when she was accused of doing something out of compliance during a meeting, Leal took the word of a white employee over her word; Leal gave her write-ups; Leal failed to give her access to her employment records; and Leal provided an unfavorable reference after she resigned.[6]

The plaintiff submitted her resignation on April 12, 2010, to be effective May 3, 2010.  In the letter, she states that it was in her best interest to submit "this two weeks notice."  She said that it was "a rewarding experience working in the Pearland Independent School District" as a counselor and thanked Leal for "the opportunities that have been provided to me by Pearland ISD and for your support as my Principal/Supervisor."  Nevertheless, she now claims that her resignation was forced.

The plaintiff filed a formal EEOC charge of discrimination on September 15, 2010, and subsequently filed suit in this Court, claiming that she was discriminated and retaliated against based on her race.

In an Opinion from June 20, 2012, this Court granted the district's motion to dismiss the plaintiff's disability and age discrimination claims, leaving the retaliation and race discrimination claims under Title VII.

---

[6]Besides her complaint about the unfavorable evaluation and reference letter from Leal, all of the plaintiff's claims about Leal and her time at Berry Miller were apparently raised for the first time during her deposition.  Nevertheless, the Court will address all of the complaints.

## III.    CONTENTIONS OF THE PARTIES

### A.    The District's Contentions

The district argues that the plaintiff cannot establish a *prima facie* case of discrimination pursuant to Title VII, under either a harassment or a race discrimination theory.  Specifically, with respect to a hostile work environment, the district alleges that the plaintiff cannot demonstrate that the alleged harassment was based on her race and, in addition, she cannot show that any harassment affected a "term, condition, or privilege" of her employment.  Regarding the race discrimination claim, the district contends that the plaintiff was not subjected to an adverse employment action (she voluntarily resigned) and she was not treated less favorably than similarly situated employees of a different class.  The district further argues that there was no retaliation because the plaintiff was not subjected to an adverse employment action and, even if some of the actions are considered adverse, there were legitimate, non-retaliatory reasons for them.

### B.    The Plaintiff's Contentions

The plaintiff claims that she has established a *prima facie* case of race discrimination because she was subjected to a hostile work environment in that she was, among other things, repeatedly harassed and abused; she was falsely reprimanded and given bad and unfair evaluations; one of her supervisors was verbally intimidating, threatening, and spoke to her in a derogatory manner; and she was subjected to conditions and actions that differed from similarly situated white employees.  The plaintiff asserts that the harassment was based on her race as an African-American woman and claims that the district has a history of discriminating against minority employees.  The plaintiff further contends that she was retaliated against because the district's actions were designed to achieve her constructive termination.

## IV.    SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c).  "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact."  *Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986).  Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts.  FED. R. CIV. P. 56(e).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists."  *Lynch*, 140 F.3d at 625.  "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party."  *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004).  Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'"  *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V.    ANALYSIS AND DISCUSSION

Under Title VII, it "shall be . . . unlawful . . . for an employer . . . to discharge any individual or otherwise to discriminate . . . with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Where, as in this case, no direct evidence of discrimination is offered, courts have applied the three-step burden-shifting analysis established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).  Under this standard, the plaintiff must first establish a *prima facie* case of discrimination, and, if successful, the burden shifts to the employer to produce evidence that the plaintiff was discharged for a nondiscriminatory reason.  *See Alvarado*, 492 F.3d at 611.  If the employer meets its burden, the plaintiff must then show that the reason provided was a pretext for discrimination.  *See Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 143 (2000).

In this case, since the plaintiff's pleadings are not a model of clarity, the Court will assume that her Title VII claim is based on two theories, a hostile work environment and race discrimination.[7]  The Court, however, is of the opinion that the plaintiff has failed to establish a *prima facie* case under either theory; her retaliation claim also fails.

## A.    Hostile Work Environment Under Title VII.

To establish a hostile work environment based on race, the plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment affected a "term, condition, or

---

[7]The plaintiff was proceeding *pro se* when she filed the suit in this Court but is now represented by counsel; however, an amended pleading correcting the ambiguities has not been filed.

privilege" of her employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.  *See Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 651 (5th Cir. 2012); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Here, there is no dispute that the African-American plaintiff is a member of a protected group and the district does not appear to dispute that she suffered some form of harassment.  The district argues, however, that she cannot satisfy elements 3 and 4 of a hostile work environment under Title VII, *i.e*., she cannot establish that the alleged harassment was based on her race, nor can she show that it affected a term, condition, or privilege of her employment.  The Court agrees.

The plaintiff complains of the following actions allegedly taken by her supervisor, Mollye Dahlstrom, while the plaintiff was a counselor at JHS: (1) Dahlstrom, after the plaintiff informed her that her husband had moved to Dallas for work, repeatedly asked her about her plans to move to Dallas, posted her position as "anticipated" at a district job fair, told her she needed to put her house on the market for sale, and threatened that she would never get another position in the district; (2) Dahlstrom was distant, unapproachable, and yelled at her; (3) Dahlstrom gave her false and unjustified write-ups; (4) Dahlstrom told a teacher that the plaintiff was on medication; (5) after she returned from FMLA leave, Dahlstrom approached and yelled at her that no one knew she was returning to work; (6) there were continuous demands on her; (7) she was required to push a trash can to students in the cafeteria and was not allowed a duty free lunch, whereas a white counselor was allowed to enjoy her lunch duty-free; (8) when she asked for a day off to attend her son's graduation, Dahlstrom questioned her request while white employees were allowed to go to their children's graduation.  The plaintiff also complains of the following while she worked at Berry Miller under the supervision of Lonnie Leal: (9) she felt

uncomfortable in a meeting and was asked certain questions only because she was African-American; (10) she received a poor evaluation from Leal and was not allowed to talk about it; (11) Leal asked another counselor to assist with the-end-of-year plan; and (12) when she was accused of doing something out of compliance during a meeting, Leal took the word of a white employee over her word.

### 1.     No Evidence That the Alleged Harassment Was Based on Race.

As noted, to establish a *prima facie* case of hostility under Title VII, the plaintiff must demonstrate that the harassment was based on her race.  *See Hernandez,* 670 F.3d at 652; *see also Watkins v. Texas Dept. of Criminal Justice*, 269 F. App'x 457, 464 (5th Cir. 2008).

In this case, even assuming that the plaintiff's litany of complaints are true, she has offered no competent summary judgment evidence to establish that the alleged harassment was based on race.  As discussed (section II, *infra*), the plaintiff made numerous complaints and filed several grievances while at JHS, but, although articulate and assertive, she never explicitly claimed that the purported harassment was based on her race.[8]  Similarly, there is no indication in the record that the plaintiff specifically complained to anyone within the district, while at Berry Miller, that any action towards her was race related.  Nevertheless, the plaintiff has since asserted, in her pleadings and during her deposition, that she thinks, or believes, that the

---

[8]The earliest the plaintiff's status in a protected class became an issue was in October of 2009, and it was not based on her own initiation.  In fact, as noted, in her grievance from October 15, 2009, the plaintiff simply complained of a hostile environment and never specifically claimed that it was based on her race.  Rather, it appears that when the district hired an investigator to investigate the grievance, the investigator, *sua sponte*, decided to address issues related to race or other protected status.  Almost all of the plaintiff's complaints regarding her supervisor at JHS appear to relate to events prior to October of 2009, the earliest date race became an issue in the case.

Similarly, besides her complaints about the unfavorable evaluation and reference letter from Leal, all of the plaintiff's claims about Leal and her time at Berry Miller were raised for the first time during her deposition and there is no indication  in the record that, during her time at Berry Miller, she specifically complained that any action against her was race-related.

The plaintiff has failed to rebut the district's evidence, *i.e.*, her own emails and written complaints, which indicate that she never specifically complained of race discrimination until, at the earliest, October of 2009.  While not dispositive, the plaintiff's failure to complain of race discrimination is further indication that, in her mind, the alleged harassment was not based on race.

harassment she experienced at both JHS and Berry Miller was based on race.  She also seems to argue that since there is no other explanation for the actions she complains of, they must be race related.  In essence, besides her subjective beliefs, the plaintiff has not satisfactorily explained, nor has she provided any objective and competent evidence that she was harassed based on race.  As the Fifth Circuit has repeatedly held, however, a plaintiff's subjective beliefs and conclusory statements are not sufficient to establish that the alleged harassment was based on race.  *See Watkins*, 269 F. App'x at 464 ("conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at "the summary judgment state of an employment-discrimination case"); *Shackelford v. Deloitte & Touche*, *LLP*, 190 F.3d 398, 405 (5th Cir. 1999) (bare allegations of racial discrimination are too speculative to create a jury issue) (citations omitted); *E.E.O.C. v. La Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("[A]n employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief").

In an attempt to establish that the alleged harassment was based on race, the plaintiff has provided three affidavits from former employees of the district, Billy Sellers, Arlene Ford, and Lorri Meraz Grabowski.  While these former employees claim that they suffered from race discrimination in the district, they either worked at a different school and/or under different supervisors than the ones whose actions are being challenged in this case.  Therefore, the Court finds these affidavits, since they are related to different supervisors and/or different schools and time periods, insufficient to establish that the alleged harassment the plaintiff specifically complains of was based on race.[9]  *See Caldwell v. Univ. of Houston Sys.*, No. H-11-2014, 2012

---

[9]The district has moved to strike a "significant portion of the affidavits," claiming that they are based on hearsay. While the Court agrees that the affidavits contain some hearsay, the Court need not decide the issue because, as noted, the affidavits do not establish that the purported harassment of the plaintiff was race related.

WL 2912033, at *6 (S.D. Tex. July 16, 2012) (this Court held that the plaintiff's "anecdotal evidence of other allegedly-dissatisfied African Americans [was] inadmissible to show that the defendant ha[d] acted discriminatorily toward the plaintiff unless she demonstrates that the other alleged victims were similarly situated, which requires at least a showing that the other alleged victims were supervised by the same person, worked in the same department or area, and performed duties similar to the plaintiff"); *see also Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005); *Swanson v. Gen.Services Admin.*, 110 F.3d 1180, 1190 (5th Cir. 1997).[10]

Having presented no evidence that the alleged harassment was race-based, the plaintiff has failed to establish a *prima facie* case.  *See Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt.*, No 11-31070, 2012 WL 5951550, at *2 (5th Cir. Nov. 29, 2012) (although there were "numerous acts showing hostility" between the plaintiff and her coworkers, she "failed to show that this hostility was related to her race"); *see also Hernandez,* 670 F.3d at 652.

### 2.    The Plaintiff Has Not Established That the Harassment Affected a "Term, Condition, or Privilege" of Her Employment.

Moreover, the Court is of the opinion that the plaintiff cannot satisfy element 4 of her *prima facie case*, *i.e.*, she cannot demonstrate that the harassment affected a "term, condition, or privilege" of her employment.  *Hernandez*, 670 F.3d at 651.  A Title VII harassment claim is actionable "only if it is 'so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'"  *Clark County Sch. Dist. v. Breeden*,

---

[10]In her response papers, the plaintiff seems to argue that the discrimination about which she complains is "system-wide."  The Court cannot consider such argument for two reasons.  First, it was not pled in the plaintiff's complaint and cannot be interjected in this case at this late juncture.  Secondly, a claim of systemic or pattern discrimination is not available in a private, non-class action lawsuit.  *See Richmond v. Coastal Bend College Dist.*, 883 F. Supp. 2d 705, 718 (S.D. Tex. 2012) (in "the Fifth Circuit, the pattern-or-practice method of proof is not available in private, non-class action lawsuits") (citations omitted); *see also Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001) (the "pattern or practice discrimination case is brought either by the government or as a class action to establish 'that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers'").

532 U.S. 268, 270 (2001); *see also Harris v. Forklift Systems., Inc.*, 510 U.S. 17, 21 (1993). Because "Title VII is not a general civility code for the American workplace," the contested conduct must be extreme. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999).

Therefore, "[t]o be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999).  To determine if the environment is hostile or abusive, the Court should consider: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether it unreasonably interferes with the employee's work performance.  *See Hernandez*, 670 F.3d at 651.

The plaintiff does not allege that she was personally subjected to racially degrading comments and actions, which the Fifth Circuit has opined can, in some circumstances (when severe and pervasive), create or contribute to a hostile work environment.[11] *See White v. Gov't Employees Ins. Co.*, 457 F. App'x 374, 380-382 (5th Cir. 2012)   Rather, she claims, *inter alia*, that she was repeatedly harassed and abused; she was falsely reprimanded and given bad and unfair evaluations; one of her supervisors was verbally intimidating, threatening, and spoke to her in a derogatory manner, she suffered stress and discomfort, her work was scrutinized "carefully," and she was belittled.

---

[11]During her deposition, the plaintiff claimed she informed Dahlstrom that a parent had threatened to complain to administration about the "changing of her son" out of a class.  The plaintiff claims that Dahlstrom showed her a grievance filed by the parent and said that she "hoped his black ass failed, referring to the student."  Even assuming that Dahlstrom had made such an offensive comment, the Court notes that it was isolated and did not "rise to the level of severity or pervasiveness required to support a hostile work environment."  *White*, 457 F. App'x at 380-381 (reference to an African-American client in an offensive and racially derogatory manner and other instances of race-based comments, were not severe and frequent enough to support a claim of hostile work environment).

While it may well be that the plaintiff was working in an unpleasant environment and while some of the actions she complains of may have been inconvenient, annoying, and even embarrassing, the Court, nevertheless, is of the opinion that they were not so "severe and pervasive" as to alter the plaintiff's conditions of employment.  *See Shepherd*, 168 F.3d at 874 ("A recurring point in [Supreme Court] opinions is that . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"); *see also Stokes v. Vallas County Juvenile Dept*., No. 12-10375, 2013 WL 323078, at *3 (5th Cir. Jan. 28, 2013) (where the plaintiff's complaints centered on "unfair work distribution, personal embarrassment, and/or violations of departmental policy," they were unrelated to race, and were not severe enough to alter the terms of employment); *White*, 457 F. App'x at 380-381 (most of the incidents alleged by the plaintiff "might cause offense or indicate strife" between the plaintiff and her coworkers or supervisors, but they "are not evidence of race-based harassment").

**B.     Race Discrimination Under Title VII**

To establish a *prima facie* case of race discrimination under Title VII, a plaintiff must demonstrate that: (1) she belongs to a protected group; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone who is not a member of the protected class to which she belongs or was treated less favorably than similarly situated employees of a different class.  *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citations omitted).

There is no dispute that the plaintiff, an African-American woman, belongs to a protected group and that she was qualified for her position (prongs 1 and 2).  The Court holds, however, that she cannot satisfy elements 3 and 4 because she cannot show that she suffered an adverse

employment action and that she was treated less favorably than similarly situated white employees.

      **1.**      **The Plaintiff Suffered No Adverse Employment Action.**

      The evaluations, write-ups, and alleged poor treatment of the plaintiff do not constitute adverse employment actions. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) ("[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating"). Therefore, the only adverse action the plaintiff may rely upon is her claim that she was constructively discharged. Demonstrating constructive discharge, however, "imposes a high burden" upon the employee. *Robinson v. Waste Management of Texas*, 122 F. App'x 756, 758 (5th Cir. 2004). To meet that burden, the employee "must offer evidence that the employer made [her] working conditions so intolerable that a reasonable employee would feel compelled to resign." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000). The "subjective state of mind of the employee is irrelevant." *Robinson*, 122 F. App'x at 758. Rather, the test is a "reasonable employee" test and the court can find in favor of the plaintiff only if she shows that the decision to stop working was "reasonable under all the circumstances." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

      Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but a court should consider the following factors "singly or in combination": (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation;

or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]. *Brown*, 207 F.3d at 782.

While the plaintiff claims that she was required to push the trash can to students during lunch in the cafeteria, which could satisfy factor four (reassignment to menial or degrading work), the Court notes that it was not a reassignment, but something that she only did during lunch time and there is evidence that other staff members did the same. Nevertheless, even assuming that the plaintiff has satisfied prong 4, she has failed to establish any of the other six factors. Indeed, she admits that she was not demoted, nor did she receive a reduction in salary. There is no evidence that her job responsibilities were reduced or that she was offered early retirement. Although she alleges that she was harassed, there is no evidence that the harassment was calculated to encourage her resignation. Notably, in her resignation letter, the plaintiff who is assertive and articulate, does not mention any complaints about her retirement. Rather, she states that it was "a rewarding experience working in the Pearland Independent School District" as a counselor and actually thanked Principal Leal for "the opportunities that have been provided to me by Pearland ISD and for your support as my Principal/Supervisor."

Given these facts, the Court is of the opinion that the plaintiff has failed to meet her "high burden" of showing that the district "made [her] working conditions so intolerable that a reasonable employee would feel compelled to resign." *Brown*, 207 F.3d at 782; *Robinson*, 122 F. App'x at 758-759; *see also Barrow*, 10 F.3d at 297 (the court can rule in favor of the employee only if she shows that the decision to stop working was "reasonable under all the circumstances").

**2. There Is No Evidence that The Plaintiff Was Treated Less Favorably Than Similarly Situated Employees Of A Different Class.**

The Court further finds that the plaintiff has not satisfied the last element (4) of her *prima facie* case. The plaintiff does not dispute that, after she resigned, an African-American employee replaced her. Nevertheless, she may still satisfy the last prong by showing that she was treated less favorably than similarly situated employees of a different class. *See Nasti*, 492 F.3d at 593.

In her response to the district's motion for summary judgment, the plaintiff fails to specifically address how she was treated differently than similarly situated non African-American employees. Nevertheless, the Court will address some of the complaints (most of them raised for the first time during her deposition) that may appear relevant to that issue. For example, although the plaintiff claims that she was required to push a trash can to students in the cafeteria and was not allowed a duty free lunch, whereas a white counselor was allowed to enjoy her lunch duty-free, she also admits that other non African-American employees also pushed the trash can. She claims that when she asked for a day off to attend her son's graduation, Dahlstrom questioned her request while white employees were allowed to go to their children's graduation. But, the plaintiff admits that she was ultimately given the day off. She also complains that while at Berry Miller, Leal asked another counselor to assist with the-end-of-year plan, but does not provide any evidence that the assignment was race related. Furthermore, she alleges that when she was accused of doing something out of compliance during a meeting, Leal took the word of another white employee over her word, but, besides her beliefs, there is no evidence that the alleged incident was related to her race. In essence, during her deposition and interrogatories, the plaintiff has only offered her speculations, thoughts and beliefs, and could not satisfactorily explain, nor has she provided competent evidence to establish that she was treated less favorably than similarly-situated white employees. *See Watkins*, 269 F. App'x at 464

("conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at "the summary judgment state of an employment-discrimination case"); *E.E.O.C. v. La Office of Cmty. Servs.*, 47 F.3d at 1448 ("[A]n employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief").

To the extent that the plaintiff is relying on the affidavits of three former employees of the district to establish that she was treated differently than similarly situated white employees, her arguments are rejected based on the reasons fully discussed, *infra*, (Section V(A)(1)).

**C.     Retaliation**

To establish a *prima facie* case of Title VII retaliation, a plaintiff must show that: (1)  she engaged in activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action.  *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).  Here, the plaintiff's claim fails for several reasons.

The Court is of the opinion that the plaintiff did not engage in protected activity under Title VII until October 15, 2009.  Therefore, any actions that she complains of prior to that date cannot be deemed retaliatory.  An employee has engaged in activity protected by Title VII if she has either: (a) "opposed any practice made an unlawful employment practice" by Title VII; or (b) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 492 (5th Cir. 2011).  Merely complaining about a "hostile work environment" does "not itself constitute 'protected activity' within the meaning of Title VII, as this complaint lack[s] a racial or gender basis."  *Davis*, 448 F. App'x at 493.

In this case, prior to October 15, 2009, the plaintiff, an articulate and assertive woman, sent several emails and letters to people in administration and filed several grievances complaining of, *inter alia*, the way JHS was being managed and that she was subjected to a hostile work environment.[12]   However, she never specifically claimed that any of the alleged hostility was based on her race or that the district engaged in employment practice made unlawful under Title VII.   The earliest the plaintiff's status in a protected class became an issue was in October of 2009, and it was not because of the plaintiff's own initiation.   Rather, it appears that when the district hired an investigator to investigate the plaintiff's October 15, 2009, grievance, the investigator, *sua sponte*, decided to address issues related to race or other protected classes.   Therefore, the plaintiff did not engage in Title VII protected activities until, at the earliest, October 15, 2009, and any actions she complains of prior to that date cannot be deemed retaliatory.   *See Davis*, 448 F. App'x at 493 (merely complaining about a "hostile work environment" does "not itself constitute 'protected activity' within the meaning of Title VII, as this complaint lack[s] a racial or gender basis"); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair . . . is not a protected activity"); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (the plaintiff was not engaged in protected activity because although she complained of harassment, she never claimed that it was racial).

---

[12]In an undated letter to Nan Weimer, which, for the benefit of the plaintiff, the Court will assume pre-dates October 15, 2009, the plaintiff mentions, *inter alia*, we "tried to explain and give reasons for classes not equally leveled," delegations of "duties and responsibility is stemming from other teachers, technologist, and administration which are unbalanced," and comments "are being made about children/people that shouldn't be.  Open expressions of favor shown to some staff members."  The case law makes it clear, however, that those allegations, which lack specificity and details, are not sufficient to constitute protected activity under Title VII.  *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair . . . is not a protected activity"); *see also Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006).

Accordingly, the Court will only address the actions that the plaintiff complains of after October 15, 2009, *i.e.*, she felt uncomfortable at a meeting; she was not given an opportunity to talk about her evaluation; Leal asked another counselor to assist with the end-of-year plan; when she was accused of doing something out of compliance during a meeting, Leal took the word of another white employee over her word; Leal gave her a write-up; Leal failed to give her access to her employment records; and Leal provided an unfavorable reference after she resigned.[13]

The district argues that Leal was not aware that the plaintiff had engaged in protected activity, and, as such, any retaliatory actions attributed to Leal is not actionable.  *See e.g., Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) (the employer could not have retaliated against the employee if the employer did not know that the employee had engaged in protected activity under Title VII).  Leal has also declared, under penalty of perjury, that he was not aware that the plaintiff had engaged in protected activity.  The plaintiff has not specifically responded to that evidence.  Therefore, under case law and the rules of the Court, the district's argument and evidence remain undisputed.

In any event, the plaintiff has not satisfied the second element of her *prima facie* case with respect to the majority of her complaints against Leal, namely, she has failed to demonstrate

---

[13]The only action of Dahlstrom that appears to be after October 15, 2009, is a write-up from October 21, 2009.  The record establishes, however, that the write-up is based on complaints, in the forms of emails (which are part of the record), from three teachers that the plaintiff behaved inappropriately during a meeting.  Therefore, it is not clear that the write-up can be considered an "adverse" employment action.  *See Dehart v. Baker Hughes Oilfield Operations*, 214 F. App'x 437, 442 (5th Cir. 2007) (written warning for insubordination, being argumentative, and for excessive lateness did not constitute adverse employment action).

Furthermore, the Court is of the opinion that the overwhelming majority of the alleged actions taken by Dahlstrom cannot support a retaliation claim because they were not "materially adverse," nor would they "dissuade" a "reasonable worker" from making or supporting a charge of discrimination.'"  *Stewart*, 586 F.3d at 331; *see also Burlington N. & Santa Fe Railway. Co. v. White*, 548 U.S. 53, 68-69 (2006) ("We refer to reactions of a *reasonable* employee because we believe" that the "standard for judging harm must be objective" and cannot be based on the plaintiff's "unusual subjective feelings") (emphasis in original); *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("Even taken in a light most favorable to [the plaintiff], allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation").

that she was subjected to "adverse employment action."  To constitute an adverse employment action in the context of a Title VII retaliation claim, the challenged employment action "must be 'materially adverse,' [or] one that would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'"  *Stewart*, 586 F.3d at 331.  As discussed, *infra* (Section V(B)(1)), the plaintiff was not constructively discharged.  Moreover, the Court is of the opinion that the following do not constitute employment action that was materially adverse or that would have dissuaded a reasonable person from making or support a charge of discrimination: the plaintiff was uncomfortable at a meeting; Leal asking another counselor to assist with the end-of-year plan; and, when the plaintiff was accused of doing something out of compliance during a meeting, Leal took the word of another white employee over her word.  *See King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("Even taken in a light most favorable to [the plaintiff], allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation"); *see also Burlington N. & Santa Fe Railway. Co. v. White*, 548 U.S. 53, 68-69 (2006) ("We refer to reactions of a *reasonable* employee because we believe" that the "standard for judging harm must be objective" and cannot be based on the plaintiff's "unusual subjective feelings") (emphasis in original); *Harris v. Fort Bend ISD*, No. H-09-2984, 2011 WL 1100235, at *9 (S.D. Tex. Mar. 22, 2011) ("complaints of increased or altered supervision, criticism and documentation, even when considered together, would not dissuade a reasonable worker from making or supporting a charge of discrimination") (citations omitted).

Similarly, under the facts of this case, Leal's write-ups do not constitute adverse employment actions because they would not have dissuaded the plaintiff from engaging in protected activity, especially where the plaintiff has a history of filing complaints even after she

had been given write-ups. *See Dehart v. Baker Hughes Oilfield Operations*, 214 F. App'x 437, 442 (5th Cir. 2007) (written warning for insubordination, being argumentative, and for excessive lateness did not constitute adverse employment action).

Even assuming that the write-ups and the unfavorable evaluation and reference from Leal constitute adverse employment action, the district has proffered legitimate, non-retaliatory reasons for them. The employer's burden of showing a legitimate, non discriminatory reason is easily satisfied because it is a burden "of production, not persuasion" and it need not involve a "credibility assessment." *Reeves*, 530 U.S. at 142. Here, the district has proffered evidence that the plaintiff's first-write up was based on her failure to follow proper protocol during a meeting with a parent and the second one concerned her failure to comply with Leal's request to have certain information prepared for a meeting; and her unfavorable March 2010 evaluation was based on her unsatisfactory performance. Therefore, the Court finds that the district has produced sufficient evidence of a legitimate, non discriminatory reason. *See Arensdorf v. Snow*, No. H-05-2622, 2006 WL 3302532, at *15 (S.D. Tex. Nov. 13, 2006) (poor performance is a legitimate, non discriminatory reason), *aff'd*, 259 F. App'x 639 (5th Cir. 2007); *see also Harvey v. Chevron U.S.A., Inc*., 961 F. Supp. 1017, 1039 (S.D. Tex. 1997).

Having determined that the district has produced a valid, nondiscriminatory reason for the plaintiff's write-ups and unfavorable evaluation and reference, the burden rests squarely on the plaintiff to establish that the district's reason was a pretext for discriminatory retaliation. A plaintiff may show that the employer's nondiscriminatory reason was pretextual by producing evidence of disparate treatment or evidence that the proffered explanation is "false" or "unworthy of credence." *Reeves*, 530 U.S. at 143.

In an attempt to show pretext, the plaintiff claims that if her performance was not acceptable, she would have been terminated as early as 2008.  As the district notes, however, performance issues do not equate to grounds for termination.  In other words, not every write-up or unfavorable evaluation warrants termination.  The plaintiff also points to the fact that she received positive recommendation letters in 2008 while she was still at JHS, but that does not mean that she continued to perform at the same level, two years later while she was at a different school.  Furthermore, the staff appreciation award she received in January of 2010, shortly after arriving at Berry Miller, does not mean that her supervisors did not have concerns regarding her performance issues.   In essence, while the plaintiff disagrees with Leal's write-ups and unfavorable evaluation and reference, it does not establish "at a new level of specificity" that the district's reason was a pretext for discriminatory retaliation.  *Harris v. First American Nat. Bancshares, Inc.*, 484 F. App'x 902, 904 (5th Cir. 2012) (the plaintiff must show "at a new level of specificity" that the employer's reason was pretextual); *Shackelford*, 190 F.3d at 408-409 (merely disputing the employer's assessment of the plaintiff's work performance "will not necessarily support an inference of pretext" and the "ultimate issue on summary judgment is whether [the plaintiff] produced enough evidence which could support a finding that she would not have been fired in the absence of her having engaged in protected conduct"); *see also Reeves*, 530 U.S. at 143 (a plaintiff may show that the employer's nondiscriminatory reason was pretextual by producing evidence of disparate treatment or evidence that the proffered explanation is "false" or "unworthy of credence").[14]

---

[14]In this Opinion, the Court is granting relief based on some arguments that it previously rejected in the district's motion to dismiss.  Such determination, of course, is not inconsistent because it is well-established that a plaintiff's burden during a motion to dismiss is much easier to satisfy than when responding to a motion for summary judgment, where the plaintiff is required to offer competent summary judgment evidence to create a genuine issue of material fact.

Moreover, since the Court is granting the district's motion based on the issues discussed, it need not address the district's other arguments in support of the motion.

## VI.     CONCLUSION

Based on the foregoing discussion, the Court finds that the plaintiff has failed to establish a *prima facie* case of hostile work environment, race discrimination, and retaliation in violation of Title VII.  Therefore, the Court GRANTS the district's motion for summary judgment in its entirety.

It is so **ORDERED**.

SIGNED on this 21st day of March, 2013.

Kenneth M. Hoyt
United States District Judge